# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NEXSTAR MEDIA INC. (f/k/a NEXSTAR BROADCASTING, INC.), <br><br> Plaintiff, <br><br> v. <br><br> SPECTRUM MANAGEMENT HOLDING COMPANY, LLC, <br><br> Defendant. | C.A. No. <br><br><br> Superior Court of the State of Delaware <br> C.A. No. N21C-08-086 AML CCLD |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that the above-captioned action is hereby removed from the Superior Court of the State of Delaware (the "State Court") to the United States District Court for the District of Delaware.

## SUMMARY OF GROUNDS FOR REMOVAL

1. Spectrum Management Holding Company, LLC ("Spectrum") removes this action because its resolution requires the adjudication of matters arising under the provisions of the Federal Communications Act, 47 U.S.C. § 151 *et seq.* ("Communications Act"), and the rules of the Federal Communications Commission ("FCC"), related to the ownership and control of broadcast television stations. This Court therefore has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, and removal is proper under 28 U.S.C. § 1441(a).

2. Plaintiff Nexstar Media Inc. ("Nexstar") pleads a single claim alleging that Spectrum breached its contract with Nexstar related to the distribution and retransmission of New York City-based television station WPIX, but Nexstar acknowledges on the face of its complaint that the contract terms governing this claim expressly incorporate provisions of the Communications Act and the FCC's rules concerning station ownership and control. The contract

is clear that, if Nexstar's assumption of management authority over WPIX violates the FCC's rules, then Spectrum does not owe Nexstar any fees relating to WPIX.

3.  While Nexstar attempts to plead around these core federal questions, the question of whether Nexstar's management of WPIX complies with the FCC's ownership and control rules is an actually disputed and essential element of Nexstar's claim. Nexstar alleges that its arrangement with WPIX complies with the FCC's rules, but Nexstar is wrong—and the FCC has not yet addressed whether Nexstar's Local Marketing Agreement concerning WPIX (the "LMA") violates the FCC's ownership and control rules. As set forth in more detail below, this case arises under the laws of the United States and should therefore be resolved in a federal forum.

## BACKGROUND

4.  On August 11, 2021, Nexstar filed the complaint in this action (the "Complaint") in the State Court. The Complaint generally alleges that Spectrum, one of the largest cable television companies in the United States, has breached the parties' retransmission consent agreement (the "Retransmission Agreement") by refusing to pay fees to Nexstar for Spectrum's carriage and distribution of WPIX. A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

5.  Nexstar alleges that the Retransmission Agreement governs Spectrum's carriage of WPIX because, on December 30, 2020, Nexstar entered into a separate agreement (the LMA) with WPIX's owner, Mission Broadcasting Inc. ("Mission"). (Ex. A, Compl. ¶¶ 2, 7, 27.) According to Nexstar, WPIX became an "Acquired Station" subject to the Retransmission Agreement because this LMA satisfies "each of the elements of the definition of an Included LMA in Exhibit F of the [Retransmission] Agreement." (*Id.* ¶¶ 27-28.)

6.  As Nexstar's Complaint acknowledges, the elements of an "Included LMA" set forth in the Retransmission Agreement expressly incorporate the Communications Act and the

2

FCC's rules promulgated thereunder. (*Id.* at Ex. 1 at Ex. F.) Exhibit F to the Retransmission Agreement states that an "Included LMA" must satisfy each and every one of nine criteria, including three criteria that specifically incorporate compliance with "FCC Rules" (defined as the "rules of the FCC"). (*Id.* at Ex. 1 at 1 & Ex. F.)

7. Nexstar alleges that the FCC has already approved the LMA and determined that Nexstar's management of WPIX complies with all of the applicable FCC rules regarding the ownership and control of television stations because Mission provided a copy of the LMA to the FCC as part of Mission's 2020 application for approval of its acquisition of WPIX. (*Id.* ¶¶ 23-25.) But the question of whether the degree of control over WPIX reflected in Exhibit F of the Retransmission Agreement is consistent with the FCC's rules and policies was not before the FCC when it approved the Mission acquisition.

8. Nexstar's claim that WPIX is an Acquired Station subject to the Retransmission Agreement also implicates the FCC's prior determination that Nexstar could not own or otherwise control WPIX without violating the FCC's national ownership cap rules. Those rules limit the number of television households a single company can reach via television stations. In 2019, the FCC approved Nexstar's acquisition of the Tribune Media Company's broadcast stations, which then included WPIX, but specifically conditioned its approval of that acquisition on (i) Nexstar's commitment to divest its interests in WPIX, and (ii) Nexstar's representation that it would "not be providing ongoing services under sharing agreements (JSAs, local marketing agreements ('LMAs') or shared services agreements ('SSAs')) to any of the stations that it is divesting." *See In re Applications of Tribune Media Company (Transferor) and Nexstar Media Group, Inc. (Transferee), et al.*, Memorandum Opinion and Order, 34 FCC Rcd 8436, 8444 ¶ 13 n.65 (2019) (quoting Applicants' Consolidated Opposition) ("*Nexstar/Tribune Order*"). The services Nexstar

provides under the LMA are the type of "ongoing services under [a] sharing agreement[]" which Nexstar committed to the FCC that it would not to provide to WPIX.  *See id.*

**JURISDICTION**

9. Nexstar's Complaint asserts a sole count for breach of the Retransmission Agreement that turns on substantial, unresolved questions of federal law as to whether Nexstar's management of WPIX—as set forth in the LMA and as evidenced by facts related to Nexstar's operation of the station—complies with the Communications Act and the FCC's ownership and control rules.

10. Although breach of contract typically is a matter of state law, "longstanding" United States Supreme Court jurisprudence holds that federal-question jurisdiction under 28 U.S.C. § 1331 exists "over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  As the Court has observed, it is a "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* at 315 (finding federal jurisdiction existed where "the meaning of the federal statute" was "an essential element of [plaintiff's] quiet title claim").

11. Courts in this Circuit applying *Grable* have held that "federal jurisdiction exists over state law claims that (i) necessarily raise a stated federal issue, (ii) that is actually disputed, (iii) substantial, and (iv) one which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *M.K. ex rel. Barlowe K. v. Prestige Acad. Charter Sch.*, 302 F. Supp. 3d 626, 633-34 (D. Del. 2018) (holding federal jurisdiction exists over a contract action where the contract concerned "rights conferred by a federal statute") (McHugh, J.); *see also PNC Bank, N.A. v. PPL Elec. Utils. Corp.*, 189 F. App'x

101, 104 n.3 (3d Cir. 2006) (applying *Grable* to find federal-question jurisdiction over a state-law action).

12. Under *Grable*, a claim for breach of a contractual provision that expressly incorporates provisions of the Communications Act and related FCC rules and necessarily raises disputed issues concerning compliance with those rules is properly removable based on federal-question jurisdiction. For example, in *Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 192 (2d Cir. 2005), the plaintiff alleged that a cable operator violated provisions of that Act applicable to cable service rates, and that the operator thus was in breach of a customer agreement which required the operator's rates to comply with applicable law. Applying *Grable*, the Second Circuit held that the breach of contract claim "necessarily raise[d] the issue" of compliance with the applicable provisions of the Communications Act, and observed that the parties' disputes over compliance with that statute "involve[d] aspects of the complex federal regulatory scheme applicable to cable television rates, as to which there is 'a serious federal interest in claiming the advantages thought to be inherent in a federal forum.'" *Id.* at 195 (quoting *Grable*, 545 U.S. at 313).

13. Like the claims in *Broder*, *M.K.*, and *Grable*, this case involves a state law claim that arises under federal law for purposes of jurisdiction under 28 U.S.C. § 1331. Nexstar's breach of contract claim necessarily raises substantial, disputed issues involving the interpretation and application of and compliance with the Communications Act and the FCC's rules because three of nine "Included LMA" criteria in Exhibit F of the Retransmission Consent Agreement expressly incorporate "FCC Rules." (Ex. A, Compl. at Ex. 1 at Ex. F.)

14. For instance, to satisfy Criteria No. 8 of Exhibit F, Nexstar must prove that "Nexstar and the FCC licensee of such station [Mission] have mutually entered into a valid and binding

LMA[.]" (*Id.*) As Spectrum has advised Nexstar in the letters referenced in the Complaint, the LMA is not "valid or binding" if Nexstar's management of WPIX through the LMA violates the FCC's rules and decisions. That determination hinges on two disputed issues that are controlled by the Communications Act and the FCC's rules: (i) whether Mission transferred express or *de facto* control of WPIX to Nexstar, such that Nexstar is in violation of the FCC's national ownership cap; and (ii) whether the FCC made any binding findings concerning the legality of Nexstar's control of WPIX when it approved Mission's acquisition of the station.

15. The FCC's national television station ownership rule precludes any party from having a "cognizable interest in television stations which have an aggregate national audience reach exceeding thirty-nine (39) percent." 47 C.F.R. § 73.3555(e)(1); *see also In re Amendment of Section 73.3555(e) of the Commission's Rules, National Television Multiple Ownership Rule*, Report and Order, 31 FCC Rcd 10213 (2016). Nexstar is well-aware that, if its arrangement with Mission transfers a "cognizable interest" in WPIX to Nexstar, that arrangement would not be "valid and binding" because Nexstar would be in violation of the national ownership cap. Indeed, that is why, only approximately one year before the LMA, the FCC conditioned its approval of Nexstar's acquisition of television stations from Tribune Media upon Nexstar's commitment to divest WPIX and its representation that it would not provide ongoing services to WPIX through any sharing agreement (like an LMA). *See Nexstar/Tribune Order*, 34 FCC Rcd at 8444 ¶ 13 n.65 (noting that the FCC expressly relied upon Nexstar's commitment to avoid any sharing agreement concerning WPIX, and that Nexstar's commitment "moot[ed]" any need for an express prohibition against such post-divestiture agreements).

16. Under FCC rules and precedent, the determination of whether Nexstar has a "cognizable interest" in WPIX as a result of its management of WPIX under the LMA turns on

whether Nexstar "controls" WPIX under Section 310(d) of the Communications Act. 47 U.S.C. § 310(d) (prohibiting the "transfer of control" of any television station license, and any rights thereunder, without a prior finding by the FCC that "the public interest, convenience, and necessity will be served" by the transfer). Section 310(d) also prohibits *de facto* transfers of control of a license without the FCC's consent. *See In re Entertainment Media Trust, Dennis J. Watkins, Trustee, et al.*, Hearing Designation Order and Notice of Opportunity for Hearing, 34 FCC Rcd 4351, 4362-63 ¶ 32 (MB 2019) ("*Entertainment Media Trust*").

17. In determining which entity effectively controls a broadcast station, including for purposes of applying the national ownership cap, the FCC has "no exact formula" and instead applies a case-by-case inquiry that "looks not only to who executes the programming, personnel, and financial responsibilities, but also to who establishes the policies governing those three areas." *In re Radio Moultrie, Inc.*, Order to Show Cause and Notice of Opportunity for Hearing, 17 FCC Rcd 24304, 24306 ¶¶ 8-9 (2002); *see also Entertainment Media Trust*, 34 FCC Rcd at 4362-63 ¶ 32. In addition, even in the absence of a finding of *de facto* control, the FCC can find that an LMA "convey[s] a degree of influence . . . sufficient to warrant" ownership attribution of the station for the purposes of assessing compliance with the national ownership cap. *In re 2002 Biennial Regulatory Review – Review of the Commission's Broadcast Ownership Rules and Other Rules Adopted Pursuant to Section 202 of the Telecommunications Act of 1996*, Report and Order and Notice of Proposed Rulemaking, 18 FCC Rcd 13620, 13743 ¶ 318 (2003), *aff'd in part*, *Prometheus Radio Project v. FCC*, 373 F.3d 372 (3d Cir. 2004); *see also In re Applications of Tribune Media Company (Transferor) and Sinclair Broadcast Group (Transferee) for Transfer of Control of Tribune Media Company and Certain Subsidiaries WDCD(TV), et al., and for*

7

*Assignment of Certain Licenses from Tribune Media Company and Certain Subsidiaries*, Hearing Designation Order, 33 FCC Rcd 6830, 6839 ¶ 26 (2018).

18. Nexstar attempts to side-step the national ownership cap issues raised by the Complaint by contending that the FCC already approved the LMA when it approved Mission's application for the acquisition of WPIX. (Ex. A, Compl. ¶¶ 23-25.) However, that is far from a settled issue given Mission and Nexstar's silence in that application concerning the national ownership cap and Nexstar's prior representations to the FCC. In fact, even setting aside the possible violation of the national ownership cap, Nexstar's representation that WPIX is an Included LMA is contrary to its prior representations and potentially a violation of the FCC's rules prohibiting licensees from intentionally making material factual statements to the Commission that are incorrect or misleading. *See* 47 C.F.R. § 1.17(a)(1).

19. Whether the LMA is "valid and binding" also will require an assessment of the federal question of the import of the FCC's approval of the Mission transaction in light of the FCC's rules concerning candor and transparency. *See* 47 C.F.R. § 1.17; *id.* § 1.65(a) (information furnished in an application must be accurate and complete).

20. In addition, to satisfy Criteria Nos. 1 and 4 of Exhibit F, Nexstar must prove that it (i) "has day to day managerial authority over [WPIX] except to the extent that the owner and licensee of such station is **required by FCC Rules** to maintain such authority"; (ii) "supervises and directs the employees of [WPIX] except to the extent that the owner and licensee of such station is **required by FCC Rules** to supervise and direct such employees"; and (iii) "performs all programming functions" for WPIX "to the extent **permitted by FCC Rules**." (Ex. A, Compl. at Ex. 1 at Ex. F) (emphasis added). Determining whether Nexstar has "day to day managerial authority" over WPIX, "supervises and directs" WPIX employees, and "performs all programming

functions" to the maximum extent allowed by the FCC also turns on an application of the FCC's precedents regarding the permissible scope of LMAs under this matter's unique facts.

21. Therefore, determining whether the LMA is "valid and binding" such that WPIX could be an "Included LMA" and an "Acquired Station" under the Retransmission Agreement requires the Court to resolve disputed matters regarding television station ownership and control. These are substantial questions of federal law. *See e.g.*, *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1154-55 (2021). The resolution of these questions in federal court will not disrupt any congressionally approved balance of federal and state judicial responsibilities. Because this case will directly impact the FCC's complex federal regulatory scheme, it raises "serious federal interest[s]" that should be resolved in a federal forum. *Grable*, 545 U.S. at 313; *see also Broder*, 418 F.3d at 195.

## NOTICE AND FILING

22. This Notice of Removal is timely because Spectrum was served with the Complaint on August 27, 2021 (Ex. B, Affidavit of Service), and removal must be effectuated "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading." 28 U.S.C. § 1446(b). As of the date of this Notice of Removal, no motions in this action and no proceedings are pending in the State Court, and Spectrum's time to respond to the Complaint, which was extended to October 12, 2021 by an agreed order entered by the State Court, has not lapsed. True and correct copies of the State Court docket and all process, pleadings, and orders from the State Court not otherwise attached to this notice are attached hereto as **Exhibit C**.

23. Spectrum will promptly provide Nexstar written notice of this Notice of Removal and file a copy of the same with the clerk of the State Court as required by 28 U.S.C. § 1446(d).

RLF1 26072647v.1

## RESERVATION OF RIGHTS AND CERTIFICATION

24. By filing this Notice of Removal, Spectrum does not waive any claim, argument, or defense that may be available to it and does not concede that the Complaint pleads any claim upon which relief may be granted. *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020) ("[o]n removal, a defendant brings its defenses with it to federal court"). Spectrum expressly reserves all rights to assert any such claim, argument, and/or defense.

25. Spectrum further reserves the right to submit at an appropriate time and under appropriate confidentiality protections documentation, evidence, affidavits, and/or other factual material to support the foregoing bases for federal jurisdiction, should that become necessary.

26. Spectrum reserves the right to supplement and/or amend this Notice of Removal to add other bases for federal jurisdiction that may become apparent as a result of any amended complaint filed by Plaintiff or otherwise.

27. This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

WHEREFORE, Spectrum hereby removes this action from the Superior Court of the State of Delaware to this Court.

| | |
|---|---|
| OF COUNSEL: | */s/ Kelly E. Farnan*<br>Kelly E. Farnan (#4395)<br>Richards, Layton & Finger, P.A. |
| JENNER & BLOCK LLP<br>Howard J. Symons<br>1099 New York Avenue, NW Suite 900<br>Washington, DC 20001<br>(202) 639-6000<br>hsymons@jenner.com | One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>(302) 651-7700<br>farnan@rlf.com<br><br>*Attorneys for Defendant Spectrum Management Holding, LLC* |
| JENNER & BLOCK LLP<br>Megan B. Poetzel<br>Lina R. Powell<br>353 N. Clark Street<br>Chicago, IL 60654<br>(312) 222-9350<br>mpoetzel@jenner.com<br>linapowell@jenner.com | |

Dated:  September 27, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2021, I electronically filed the foregoing Notice of Removal with the Clerk of the Court by using the CM/ECF system. I further certify that a true and correct copy of the Notice of Removal was caused to be served on the following counsel via electronic mail:

**BY ELECTRONIC MAIL**
A. Thompson Bayliss
Daniel J. McBride
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

**BY ELECTRONIC MAIL**
Mitchell A. Kamin
Mark Chen
Covington & Burling LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067

**BY ELECTRONIC MAIL**
Lindsey Barnhart
Covington & Burling LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306

                                              */s/ Kelly E. Farnan*
                                              Kelly E. Farnan (#4395)
                                              farnan@rlf.com