IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NEXSTAR MEDIA INC. *formerly known as* NEXSTAR BROADCASTING, INC.,

    *Plaintiff*,

    v.

SPECTRUM MANAGEMENT HOLDING COMPANY, LLC.

    *Defendant*.

No. 1:21-cv-1358-SB

---

A. Thompson Bayliss, Daniel John McBride, ABRAMS & BAYLISS LLP, Wilmington, DE.; Mitchell A. Kamin, Mark Chen, COVINGTON & BURLING LLP, Los Angeles, CA; Lindsay Barnhart, COVINGTON & BURLING LLP, Palo Alto, CA.

*Counsel for Plaintiff*.

Kelly E. Farnan, RICHARDS, LAYTON & FINGER, PA, Wilmington, DE; Howard J. Symons, JENNER & BLOCK LLP, New York, NY; Megan B. Poetzel, Lina R. Powell, JENNER & BLOCK LLP, Chicago, IL.

*Counsel for Defendant*.

---

**MEMORANDUM OPINION**

January 12, 2022

BIBAS, *Circuit Judge*, sitting by designation.

Federal courts may hear only certain types of cases; the rest belong in state court. Here, a contract dispute between TV providers requires a court to consider federal regulations. That, one party says, is enough to make a federal case out of a state-law contract suit. Not so. State-court interpretation of federal laws is a feature of our federal system, not a bug. And there is no substantial issue that could affect the federal system. So I remand this case to state court.

## I. BACKGROUND

When we watch the local news, we do not see the complex contractual web that brings the images to our screens. But here we must take a closer look.

Like most cable providers, Spectrum does not generate its own news content. Instead, it pays TV station owners to rebroadcast their content to its viewers. Thus, Spectrum contracted with Nexstar to retransmit Nexstar's stations. D.I. 2 ¶¶ 4–5."

As one of the nation's largest station owners, Nexstar regularly buys and sells stations. So its contract with Spectrum included an "After-Acquired Stations" term. D.I. 3, at 16; D.I. 2 ¶¶ 5–6. If Nexstar later "bec[a]me[] the majority owner" or got "day-to-day managerial authority" of a station, then that station was covered by the parties' contract. D.I. 3, at 16, 37.

Sure enough, Nexstar later signed a contract with another TV station group— Mission Broadcasting. That agreement gave Nexstar control over WPIX, a New York local-news station. D.I. 2 ¶ 7.

Believing that its agreement with Mission gave it "managerial authority" over WPIX, Nexstar started charging Spectrum fees for rebroadcasting that station. *Id.*

2

¶¶ 4, 7. But Spectrum refused to pay up, arguing that WPIX was not an after-acquired station under the parties' contract.

So Nexstar sued for breach of contract in Delaware state court. Spectrum promptly removed to federal court. Now, the parties file competing motions to move this case out of this forum. Spectrum asks me to transfer it to a federal court in New York. D.I. 11. Nexstar argues that I lack jurisdiction to hear this case and asks me to send it back to Delaware state court. D.I. 17.

## II. THIS COURT LACKS JURISDICTION OVER STATE CONTRACT CLAIMS

Federal courts may hear only suits in which the parties hail from different states or cases that raise a federal question. Because this dispute fits neither category, I will send it back to state court.

Here, both Spectrum and Nexstar are Delaware corporations, so I lack diversity jurisdiction. D.I. 2-1 ¶¶ 11–12; 28 U.S.C. § 1332. Thus, I may hear this case only if Nexstar's claim "aris[es] under the … laws … of the United States." § 1331.

As a rule, a case arises under federal law if the complaint pleads a federal cause of action. *Am. Well Works v. Layne v. Bolwer Co.*, 241 U.S. 257, 260 (1916). That is not the case here. Nexstar's complaint states only a state-law claim for breach of contract. D.I. 2-1 ¶ 10.

But there is one narrow exception to the general rule: a state-law claim may implicate important federal issues that belong in federal court. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 310 (2005). This "slim category" is limited to federal issues that are "actually disputed" and vital to the whole federal system. *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

Spectrum argues that this case fits that narrow exception. To understand its argument, we must plumb the parties' contract and consider the Federal Communication Commission's role in regulating TV stations.

**A. This case implicates FCC rules**

Start with the parties' contract. Under it, Spectrum would have to pay Nexstar if WPIX was an "After-Acquired Station." D.I. 3, at 16. For WPIX to count, the contract says, Nexstar had to have control over it. And the contract sets forth a nine-step test to determine whether Nexstar had that control. *Id.* at 37. Step eight of the test requires "Nexstar and [Mission] [to have] … mutually entered into a valid and binding [agreement]." *Id.*

Spectrum claims that Nexstar's contract with Mission is not a "valid and binding" contract because it violated the FCC's rules. D.I. 12, at 3–4, 17. Those rules bar a company from "having a cognizable interest in television stations which have an aggregate national audience reach exceeding thirty-nine (39) percent." 47 C.F.R. § 73.3555(e)(1).

According to Spectrum, Nexstar exceeded that market cap when it gained control of WPIX. Spectrum notes that the FCC required Nexstar to sell off WPIX once before to ensure that it fell below the national ownership cap. D.I. 12, at 4.  Plus, it points out, the FCC has already been asked to investigate whether "Nexstar has *de facto* control over WPIX" in violation of the rules. *Id.* at 5.

Thus, Spectrum argues, a court cannot decide whether WPIX is an after-acquired station without determining whether the Nexstar-Mission agreement violated FCC rules. D.I. 22, at 11. If it did, then it is not a "valid and binding" contract. Plus,

4

Spectrum says, other steps in the contract's control test expressly refer to the FCC rules, requiring a court to interpret them. *Id.*

This argument is plausible. By implicating the FCC's rules, the parties' contract dispute raises a federal issue. But that alone is not enough. To trigger federal jurisdiction, a federal issue must also be "actually disputed and substantial." *Grable*, 545 U.S. at 314.

### B. Any disputed federal issue is not substantial enough

This case does not fall within *Grable's* limited exception. Though there are several "actually disputed" federal issues, none is of "importance … to the federal system as a whole." *Gunn*, 568 U.S. at 260.

*1. There are disputed federal issues.* Nexstar's state-law claim "necessarily raise[s]" disputed federal issues. *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014), *aff'd*, 578 U.S. 374 (2016). To decide whether Nexstar controlled of WPIX, a court must apply the contractual test. And that test directs a court to interpret the FCC's rules. Does Nexstar have "the right to oversee … [WPIX] programming … to the extent permitted by FCC Rules"? D.I. 3, at 37 ¶ 4. And did it file its agreement with Mission with the FCC, "if required by FCC Rules"? *Id.* at ¶ 8.

Plus, the contract asks whether Nexstar had a "valid and binding" agreement with Mission. *Id.* And Texas law—which governs the Spectrum contract—does not enforce illegal agreements. *Id.* at 18 ¶ 18; *Peniche v. Aeromexico*, 580 S.W.2d 152, 156 (Tex. Civ. App. 1979). Thus, if Nexstar contracted with Mission in violation of the FCC's

market-cap regulations, a court could decide that it was not a "valid" agreement under the terms of the Spectrum contract.

*2. Those federal issues are not important enough.* But those issues are not important enough for this case to fit the narrow *Grable* exception. To see why, consider the consequences this litigation will have on the federal system. True, to decide whether the Nexstar-Mission contract was "valid and binding," a court might have to decide if Nexstar exceeded the FCC's market cap. But that contract-interpretation decision would determine only Spectrum's duty to pay for WPIX. It would not dissolve Nexstar's contract with Mission, change Nexstar's control of WPIX, or alter Nexstar's market share. Those issues are not part of this case and would be left for the FCC to decide. So Spectrum's argument that this question would have "systemic impact, because the Nexstar-Mission arrangement … is emblematic of industry-wide behaviors," falls flat. D.I. 22, at 18.

Though this dispute matters to the parties, it is not significant for the federal system. *See Gunn*, 568 U.S. at 258–59. Thus, this case is readily distinguishable from those crucial federal issues that fall within *Grable*'s narrow exception. *Cf. Grable*, 545 U.S. at 315 (addressing the ability of the federal government to recover unpaid taxes); *Smith v. Kan. City Title & Tr. Co.*, 255 U.S. 180, 199 (1921) (addressing the constitutionality of federal banks and their bonds).

\* \* \* \* \*

Because I lack jurisdiction over this case, I must remand to Delaware state court. *See, e.g., PJM Interconnection, LLC v. Round Rock Energy, LP*, 2013 WL 1498668 (D.

Del. Apr. 12, 2013). We should not lament that. State courts have always decided cases with federal implications. *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 342 (1816).

Given my order to remand, Spectrum's motion to transfer this case is now moot. D.I. 11.